**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**
**Civil Action No. 1:26-CV-162**

| | |
|---|---|
| JESSICA M. GEORG,<br><br>    Plaintiff,<br><br>    v.<br><br>COSTCO WHOLESALE<br>CORPORATION,<br><br>    Costco. | **PLAINTIFF'S RESPONSE IN OPPOSITION TO COSTCO'S PARTIAL MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT** |

Plaintiff, through counsel, in an abundance of caution, hereby responds to Costco's Partial Motion to Dismiss her Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure [Doc 15]. Plaintiff's Amended Consent Motion for Extension of Time is currently pending before the Court [Doc. 22], and should the Court grant the request, Plaintiff respectfully requests that this response be withdrawn and that they can file their more fully detailed response in the time allowed.

## INTRODUCTION

Plaintiff has worked at Costco's Winston-Salem warehouse for over thirteen years. For much of that time, she was sexually harassed and assaulted by a male supervisor, reported it repeatedly to management, and watched Costco do nothing — until she filed an EEOC charge and the EEOC found reasonable cause that Costco had violated Title VII. What followed was worse: a documented, management-directed campaign of retaliation that reduced her pay, restricted her

duties, silenced her attempts to respond to a negative performance review, escalated to approximately ten disciplinary notices, and culminated in a suspension issued six days after she requested FMLA leave for the PTSD Costco's deliberate indifference exacerbated. Costco now moves to dismiss claims that are not only plausible — they are detailed and well pled. Costco's motion relies overwhelmingly on summary judgment authority and asks this Court to ignore allegations it is required to accept as true. The motion should be denied in its entirety.

## **FACTS**

The facts in the light most favorable to Plaintiff are as follows:

### I. Plaintiff and Her Employment

Plaintiff has been continuously employed by Costco Wholesale Corporation at its Winston-Salem, North Carolina warehouse store (Store #361) since November 29, 2012. Doc. 12, ¶ 1-2. She began as a seasonal, part-time Cashier Assistant, and her classification was changed to a permanent position on December 26, 2012. Doc. 12, ¶¶ 14-15. Throughout her employment, Plaintiff performed her job duties competently and professionally, and her annual performance reviews were consistently positive. Doc. 12, ¶¶ 17-18.

### II. David Wiggins' Decade-Long Pattern of Sexual Harassment

David Wiggins was employed at the Winston-Salem warehouse beginning in or around 2006 and was later promoted to Front-End Supervisor — a position that gave him supervisory authority over female employees, including Plaintiff. Doc. 12, ¶ 23-24. Despite a documented pattern of sexual harassment complaints spanning over a decade — known to Costco's General

2

Managers, Assistant General Managers, and fellow supervisors — Costco retained Wiggins, promoted him, and permitted him to exercise that supervisory authority throughout his tenure. Doc. 12, ¶ 24.

Costco received at least ten complaints or reports of sexual harassment against Wiggins from at least seven female employees, dating back to Summer 2011 — before Plaintiff was even hired. Doc. 12, ¶ 25. The complaints include: a Summer 2011 report of a sexual comment made in the warehouse parking lot, with no discipline issued; an October 2012 report of repeated sexual overtures to a female employee, with no discipline issued; Plaintiff's August 10, 2017 report of sexual assault and ongoing workplace harassment, with no investigation conducted and no discipline issued; a September 2020 report by a former female employee that Wiggins had sexually taken advantage of her, after which Wiggins received only an informal verbal coaching for admitting he told Plaintiff she had a "fat ass"; and August 2022 complaints from three additional female employees, which uncovered two further women who had been harassed but had not previously come forward. Doc. 12, ¶ 25.

### III. Wiggins' Harassment of Plaintiff

Beginning in 2012 and continuing through March 2023, Wiggins subjected Plaintiff to relentless, unwelcome sexual harassment throughout her employment, including: telling her upon hire that he could help her "get some strange"; repeatedly telling her she had a "fat ass" and a "fat pussy" — a comment Wiggins admitted to making during Costco's 2020 investigation; repeatedly telling her "I would fuck you so good"; and repeatedly making explicit comments suggesting Plaintiff preferred sexual encounters with Latino coworkers. Doc. 12, ¶ 27.

3

The harassment became so severe and pervasive that on or about August 15, 2016, Plaintiff voluntarily demoted herself from Front End Cashier to a part-time Maintenance Assistant — a position so undesirable she was the only person in the warehouse to apply for it — specifically to avoid Wiggins. The demotion reduced her pay and employment status. Doc. 12, ¶ 29.

On the evening of August 9, 2017, Plaintiff attended a social gathering at a coworker's residence. Wiggins arrived uninvited and sexually assaulted Plaintiff during the early morning hours of August 10, 2017. Doc. 12, ¶ 31. Hours after the assault, Plaintiff reported it — and Wiggins's ongoing workplace harassment — to AGM Tara Coltman and Front-End Manager Chase Pullen during her shift. Coltman and Pullen told Plaintiff that because the assault was off-campus, there was nothing Costco could do. No investigation was conducted, and no discipline was issued. Doc. 12, ¶ 32. Costco's own sexual harassment policy, Section 2.6, expressly states that sexual harassment "is not limited to the physical workplace" and lists "sexual assault" as prohibited conduct. Doc. 12, ¶ 33.

In September 2020, when interviewed during an investigation into another employee's complaint, Plaintiff again reported the 2017 assault and ongoing harassment to then-GM Alfredo Rodriguez. Rodriguez issued Wiggins only informal verbal coaching for the one comment he admitted making. Doc. 12, ¶ 34. Costco's own policy, Section 11.3, designates sexual harassment as a Cause for Termination that requires no prior Counseling Notices and mandates that, if termination does not occur, a permanently retained Employee Counseling Notice must be issued. Wiggins received neither. Doc. 12, ¶ 35.

**IV. Plaintiff's 2022 Complaints and Costco's Response**

4

In July 2022, while Plaintiff was cleaning a leaking watermelon display, Wiggins stood over Plaintiff and a young Latino coworker and made sexually explicit comments stating that Plaintiff and the coworker would be a compatible sexual match because Plaintiff "liked that Latin dick" and "likes them young." Doc. 12, ¶ 40.

On August 14, 2022, Receiving Manager Jessie Rodriguez — wife of former GM Alfredo Rodriguez — emailed GM Napolitano along with the entire AGM distribution list, recommending they all "sit down & discuss Jessica and take notes," and warning that a recent conversation with Plaintiff "didn't seem that big of a deal" but that Plaintiff "took it & ran with it." Doc. 12, ¶ 42.

On August 20, 2022, Plaintiff met with GM Napolitano and reported that Wiggins had raped her five or six years earlier; that he had made repeated sexually explicit comments about her body throughout her employment; that at least seven other women had been subjected to similar harassment; and that management had been "sweeping it under the rug" since at least 2010. Doc. 12, ¶ 45. During a second meeting that same day, Napolitano confirmed that sexual harassment allegations against Wiggins dated back to at least 2010 and spanned at least five separate years, but minimized the pattern, noted there were gaps between complaints, that one accuser had recanted, and that Plaintiff's situation "involved alcohol." Napolitano made no mention of contacting Human Resources, suspending Wiggins, or taking any remedial action. Doc. 12, ¶ 47.

On August 23, 2022, Plaintiff escalated the matter to RVP Tom Feely via both email and voicemail. Feely returned Plaintiff's call the same day. Doc. 12, ¶ 50.

On November 18, 2022 — over twelve weeks after Plaintiff's initial interview — Costco brought in outside counsel Stephanie Delatorre of Seyfarth Shaw LLP to conduct a second

5

investigative interview of Plaintiff. Delatorre opened the interview by asking whether Plaintiff had retained her own counsel, then advised Plaintiff that her statements would not be protected by attorney-client privilege. The interview then centered on the August 2017 sexual assault, with Delatorre asking what Plaintiff was drinking, how much she drank, what she was wearing, and how and where Wiggins began touching her. Doc. 12, ¶ 56. The interview left Plaintiff so overwhelmed and distraught that she asked to be put on the sick log for the next day before even leaving the warehouse. Doc. 12, ¶ 57.

### V. Plaintiff's PTSD Diagnosis

Plaintiff has a history of Post-Traumatic Stress Disorder (PTSD) for which she has been treated on and off over the years. Wiggins' and Costco's conduct triggered and exacerbated her PTSD symptoms. On or about December 13, 2022, Plaintiff's PTSD was treated, and her diagnosis was later updated to chronic PTSD. She has been continuously treated for PTSD by her psychiatrist and therapist from December 2022 through the present. Doc. 12, ¶¶ 66–67. Plaintiff's PTSD symptoms include panic attacks, nightmares, hypervigilance, dissociation, derealization, difficulties concentrating, intrusive thoughts, and avoidance behaviors, and she has required multiple periods of medical leave due to their severity. Doc. 12, ¶¶ 68, 70.

### VI. Wiggins' Termination

Wiggins was not terminated until March 2023 — over eleven years after the first documented complaint, and only after Plaintiff filed her EEOC charge in December 2022 and an outside investigation by Costco's external counsel substantiated complaints from multiple female employees. Upon information and belief, Wiggins was terminated for sexually harassing multiple

6

female employees, for dishonesty during investigation interviews, and for having sex with a female employee in the warehouse bathroom while on duty. Doc. 12, ¶ 26.

Following Wiggins' termination, on October 13, 2023, Wiggins entered the warehouse as a customer during Plaintiff's work shift. His presence triggered Plaintiff to have a panic attack. Plaintiff went to Napolitano's office and asked to leave early. Napolitano told her Wiggins had not been banned from the store and could come in as a customer to shop. Doc. 12, ¶ 89.

## VII. Retaliation Following Plaintiff's Protected Activity

**Reduction in Cashier Hours.** Prior to her August 2022 complaints, Plaintiff was regularly called to assist on the Front End as a Cashier at a higher rate of pay than her Maintenance position. Following her complaints, Plaintiff's cashiering opportunities were drastically and measurably reduced: in the thirteen weeks prior to her complaint, Plaintiff worked as a Cashier twenty-five times; in the thirteen weeks following, she was called only fourteen times — a forty-four percent reduction. Doc. 12, ¶ 94.

**Negative Performance Evaluation.** On November 23, 2022 — just five days after Plaintiff's two-hour interrogation by Costco's outside counsel regarding her sexual assault — Plaintiff received her 2022 Employee Performance Review containing negative comments issued by AGM Jason Devens, who had just been promoted on or about November 11, 2022, and had never previously supervised Plaintiff. Doc. 12, ¶¶ 97, 100. Unlike Plaintiff's previous consistently positive reviews, the 2022 review contained multiple negative and internally contradictory comments. Doc. 12, ¶ 99. When Plaintiff attempted to make notations on the review, Devens discouraged her, stating that making comments could be viewed negatively if she applied for a

different position or transfer in the future — despite the review containing a designated section for "Employee Comments." Doc. 12, ¶¶ 103–104.

**Heightened Scrutiny and Limitation of Work Duties.** In September 2023, Plaintiff was told she was required to check in and out at the front end for her breaks and lunches — a requirement not applied to other employees. Doc. 12, ¶ 116. In December 2023, Napolitano monitored Plaintiff's surveillance while she performed a maintenance repair and then, with AGM Reid, micromanaged Plaintiff and instructed her to perform only basic janitorial tasks. Plaintiff pointed out that her male colleague, Zan Rittenberry, was not skilled in maintenance but was permitted to perform skilled work without question or scrutiny. Doc. 12, ¶ 117. In January 2024, Napolitano warned Plaintiff to be careful about reporting ethics violations when Plaintiff had simply reported a potential violation to the appropriate manager. Doc. 12, ¶ 118.

**Escalating Discipline and Suspension.** Between April 2024 and October 2025, Costco issued Plaintiff approximately ten Employee Counseling Notices for absences and tardiness directly caused by her FMLA-qualifying PTSD and the side effects of her prescribed medications, culminating in a suspension on October 1, 2025. Doc. 12, ¶¶ 105, 120. Four of these disciplinary actions — including the October 1 suspension — occurred within three months of the EEOC's July 11, 2025 determination that Costco had subjected Plaintiff to sexual harassment and retaliation. Doc. 12, ¶ 106. The three October 1, 2025 counseling notices were issued by GM Keith Napolitano and AGM Kristi Denis. Napolitano had knowledge of all of Plaintiff's complaints, had knowledge of her EEOC Charge, was interviewed by the EEOC investigator in 2023, and, on information and belief, had knowledge of the EEOC's determination. Doc. 12, ¶¶ 107–108. On information and belief, RVP Feely had to approve Plaintiff's October 1, 2025 suspension and also

has direct knowledge of Plaintiff's protected activities, EEOC Charge, and Determination. Doc. 12, ¶ 111.

## VIII. FMLA Interference and Retaliation

Plaintiff has been continuously treated for chronic PTSD since December 2022, which constitutes a serious health condition under the FMLA. Doc. 12, ¶¶ 157–158. Costco had actual knowledge of Plaintiff's FMLA-qualifying condition since December 2022, when Plaintiff was placed on medical leave for PTSD, and was aware that Plaintiff's absences and tardiness were caused by this condition and its treatment. Doc. 12, ¶ 122. Days after Plaintiff's September 25, 2025 explicit FMLA request, Costco suspended Plaintiff on October 1, 2025, citing disciplinary violations that included FMLA-qualifying absences and tardiness. Doc. 12, ¶¶ 121, 162. Costco's own Section 6.4, Footnote 44 of the Employee Agreement states that "FMLA, state law leaves, or other approved leaves and absences will not count as instances of absence." Doc. 12, ¶ 113.

## IX. EEOC Proceedings

On December 21, 2022, Plaintiff filed a Charge of Discrimination with the EEOC pro se, Charge Number 435-2023-00254, alleging sex discrimination, sexual harassment, and retaliation. Doc. 12, ¶ 7. On July 11, 2025, the EEOC issued a determination finding reasonable cause to believe that Costco violated Title VII by subjecting Plaintiff to sexual harassment based on her sex and by retaliating against Plaintiff for engaging in protected activity. The EEOC also determined that Costco subjected a class of similarly aggrieved female employees to a sexually hostile work environment at the Winston-Salem store. Doc. 12, ¶ 8. On November 18, 2025, the EEOC issued

Plaintiff a Notice of Right to Sue, and Plaintiff timely filed this action on February 13, 2026. Doc. 12, ¶¶ 9–10.

**ARGUMENT**

**I.      STANDARD OF REVIEW: COSTCO'S AUTHORITY IS OVERWHELM-INGLY INAPPLICABLE AT THE PLEADING STAGE**

As a threshold matter, 11 of the 19 cases Costco cites in support of its motion were decided at summary judgment—on fully developed evidentiary records—not on the pleadings.[1]  These authorities carry little, if any, persuasive weight on a Rule 12(b)(6) motion, where courts accept all well-pleaded allegations as true, and the question is simply whether a plausible claim has been stated.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Costco's wholesale reliance on summary judgment precedent to argue pleading insufficiency is reason enough to deny the motion.  At this stage, courts assume the truth of the factual allegations contained in the complaint and draw all reasonable inferences in the plaintiff's favor.  *See  Twombly*, 550 U.S. at 555–56 (2007); *Langford v. Joyner*, 62 F.4th 122, 124 (4th Cir. 2023).

---

[1] *Bagwell v. Downtown Parternship of Baltimore, Inc.*, No. CV ELH-18-1786, 2020 WL 247293 (D. Md. Jan. 15, 2020)(granting summary judgment on Title VII claims); *Coleman v. Schneider Elec. USA, Inc.*, 755 F. App'x 247, 250 (4th Cir. 2019)(unpublished) (affirming summary judgment on Title VII claims); *Hairston v. Barnes*, No. 1:15CV1100, 2019 WL 13549655 (M.D.N.C. Mar. 15, 2019)(granting summary judgment on Title VII claims); *Haynes v. Waste Connections, Inc.*, 922 F.3d 219 (4th Cir. 2019) (reversing summary judgment on Title VII race discrimination and retaliation claims where genuine issues of material fact existed); *Holland v. Washington Homes, Inc.*, 487 F.3d 208 (4th Cir. 2007) (affirming summary judgment on Title VII race discrimination and retaliation claims); *Magassouba v. Prince George's Cnty.*, 773 F. Supp. 3d 196 (D. Md. 2025) (granting in part and denying in part summary judgment on Title VII claims); *Odom v. CVS Caremark Corp.*, No. 3:14-0456-MGL, 2016 WL 4536341 (D.S.C. Aug. 31, 2016) (granting summary judgment on Title VII claims); *Pearsall v. Child Advocacy Comm'n of the Lower Cape Fear, Inc.*, No. 7:98CV200-BR, 2000 WL 33682693 (E.D.N.C. Feb. 15, 2000) (granting in part and denying in part summary judgment); *Tankesley v. Vidal*, No. 1:21-CV-1448, 2023 WL 4273763 (E.D. Va. June 29, 2023) (granting summary judgment on Rehabilitation Act claims); *Wandji v. Wilkie*, No. 2:18-cv-03036-RMG-MGB, 2020 WL 7647552 (D.S.C. Nov. 9, 2020) (recommending grant of summary judgment on Title VII claims); *Wright v. Sw. Airlines*, 319 F. App'x 232 (4th Cir. 2009) (unpublished) (affirming summary judgment on FMLA retaliation claim).

**PLAINTIFF EXHAUSTED HER ADMINISTRATIVE REMEDIES AND ADEQUATELY PLED TITLE VII SEX DISCRIMINATION**

### A. Plaintiff Exhausted Her Administrative Remedies

The scope of a plaintiff's right to file a federal lawsuit is determined by the charge's contents. *Luffman v. Yadkin Cnty. Bd. of Educ.*, No. 1:25-CV-942, 2026 WL 884665, at *2 (M.D.N.C. Mar. 31, 2026) (quoting *Sydnor v. Fairfax Cnty.*, 681 F.3d 591, 593 (4th Cir. 2012)). This Court recently reaffirmed that "EEOC charges need not be as detailed as complaints initiating lawsuits," that a plaintiff need not "lay out every single discriminatory act in the charge," and that "[s]o long as a plaintiff's claims in her judicial complaint are reasonably related to her EEOC charge and can be expected to follow from a reasonable administrative investigation, she may include those claims in her lawsuit." *Luffman*, 2026 WL 884665, at *3 (quoting *Sydnor*, 681 F.3d at 594 (cleaned up)). Moreover, "[d]ocuments filed by an employee with the EEOC should be construed, to the extent consistent with permissible rules of interpretation, to protect the employee's rights and statutory remedies," and construing ambiguities against a Title VII plaintiff "would undercut the remedial framework Congress intended." *Id*. (quoting *Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 406 (2008)).

For example, the Fourth Circuit found exhaustion when both the EEOC charge, and the federal complaint involved claims of discriminatory action based on different discriminatory conduct by the same actor on the same grounds of discrimination. *Smith v. First Union National Bank*, 202 F.3d 234, 247-249 (4th Cir. 2000) (finding that EEOC charge alleging that management retaliated against plaintiff by chastising her and threatening to terminate her employment for consulting with counsel was reasonably related to a complaint alleging that management retaliated against her by forcing her to work in an undesirable position and not offering other positions). *See*

11

*also*, *EEOC v. Gen. Elec. Co.*, 532 F.2d 359, 366 (4th Cir. 1976) ("*So long as the new discrimination arises out of the reasonable investigation of the charge filed*, it can be...followed...by a civil suit, without the filing of a new charge on such claim of discrimination.") (emphasis in original).

Several cases illustrate this "reasonably related" principle. In *Sydnor*, a disabled nurse indicated in a questionnaire accompanying her EEOC charge that she had sought authorization to perform light-duty work. *Sydnor v. Fairfax Cty., Va.*, 681 F.3d 591, 592 (4th Cir. 2012). Later, in a lawsuit alleging a violation of the Americans with Disabilities Act, she sought a different accommodation – namely, authorization for full-duty work with the assistance of a wheelchair. *See* 681 F.3d at 594. The Court of Appeals noted that this case was analogous to *Smith v. First Union National Bank* because the plaintiff's underlying claim of disability discrimination did not change, even though the form of the alleged discrimination changed. *Id.* at 595. Therefore, the Court found this distinction to be insignificant, reasoning that the EEOC questionnaire gave the nurse's employer "ample notice of the allegations against it" *Id*.

Costco argues Plaintiff's sex discrimination claim (Count III) was not included in her EEOC charge and is therefore unexhausted. This argument is factually wrong. Costco filed Plaintiff's EEOC Charge at Doc. 18 — it plainly alleges "Discrimination based on Retaliation, Sex" and states: "I believe that I have been discriminated against because of my sex, female, in violation of Title VII of The Civil Rights Act of 1964, as amended."

The First Amended Complaint alleges three categories of sex discrimination that were raised with the EEOC, investigated, and are squarely within the scope of what the EEOC could reasonably have been expected to investigate arising from a charge of sex discrimination. First,

Plaintiff provided the EEOC with specific examples of micromanaging and heightened scrutiny not equally applied to her coworkers, in particular male workers, and raised concerns of disparate treatment based on sex. Doc. 12, ¶ 115. Those examples are pleaded in detail: in September 2023, Plaintiff was required to check in and out at the front end for her breaks and lunches — a requirement not imposed on other employees, Doc. 12, ¶ 116; and in December 2023, Napolitano and AGM Reid micromanaged Plaintiff and instructed her to perform only basic janitorial tasks, while her male colleague Zan Rittenberry — who was not skilled maintenance — was permitted to perform skilled work without question or scrutiny. Doc. 12, ¶ 117. Second, the Charge alleges a pattern of Costco ignoring Plaintiff's multiple harassment complaints to the point where she was forced to demote herself to avoid Wiggins — reducing her pay and employment status — was denied the opportunity to rotate to different positions in the store which further reduced her compensation, and received a negative performance review after reporting the harassment. Doc. 18; Doc. 12, ¶¶ 24, 26, 29, 79, 82–83, 92–94, 97, 99–100, 132(e), 141(a). Third, the complaint alleges that Wiggins — the male harasser — was retained, promoted, and protected despite sexually harassing and assaulting Plaintiff and other female employees over more than a decade, while Plaintiff, the female victim, was disciplined for absences and tardiness directly connected to the PTSD caused by Wiggins' conduct and Costco's deliberate indifference to it. Doc. 12, ¶ 148. Plaintiff further alleges her numerous sexual harassment complaints were not taken seriously because she is female. Doc. 12, ¶ 149.

Similar to the Plaintiff in the cases cited above, who listed other actions the charge did not include but was reasonably discoverable and related because they listed the same actors and types of discrimination, the Plaintiff, in this case, also alleged other actions by the same actors and types of discrimination that her charge did not include. These allegations form the core of Count III,

Doc. 12, ¶¶ 146-149, were raised during the EEOC investigation, and are precisely what a reasonable investigation into sex discrimination and retaliation would be expected to uncover. Costco's exhaustion argument simply ignores that they exist.

### B. Plaintiff Has Adequately Pled Adverse Employment Actions and Disparate Treatment

Title VII makes it unlawful for an employer to discriminate against any individual with respect to her compensation, terms, conditions, or privileges of employment because of her sex. 42 U.S.C. § 2000e-2(a)(1). Courts "need not parse the back-and-forth of the McDonnell Douglas framework" in Title VII discrimination cases; "[i]t is enough that this record contains circumstantial evidence — including evidence of pretext — that would allow a jury to infer that the reason for [the adverse action] was sex discrimination." *Hollis v. Morgan State Univ.*, 153 F.4th 369, 381 (4th Cir. 2025).

Yet even applying *McDonnell Douglas*, Costco's argument fails on its own terms. Costco claims Plaintiff failed to plead elements three and four of its articulation of the *prima facie* test — "(3) adverse employment action" and "(4) different treatment from similarly situated employees outside the protected class." Doc. 16, pp. 4-5 (citing *Coleman v. Md. Ct. of App.*, 626 F.3d 187, 190 (4th Cir. 2010)). Element three is addressed below. As to element four, Costco misstates the standard: a plaintiff need not identify a similarly situated comparator to establish a prima facie case of sex discrimination. The fourth element requires only that the adverse action occur "under circumstances giving rise to a reasonable inference of unlawful discrimination." *Ames v. Ohio Dep't of Youth Servs.*, 605 U.S. 303, 309, 145 S. Ct. 1540, 1545, 221 L. Ed. 2d 929 (2025).

A comparator is one means of satisfying that showing, not a requirement. *Bryant v. Aiken Reg'l Med. Centers Inc.*, 333 F.3d 536, 545 (4th Cir. 2003) (employee was not required to point to

14

similarly situated white comparators to succeed on race discrimination claim under Title VII). Nevertheless, Plaintiff adequately pleads comparator evidence in addition to other circumstances giving rise to an inference of sex discrimination.

As to the adverse action element, the Supreme Court's decision in *Muldrow* forecloses Costco's argument entirely. Title VII makes it unlawful for an employer "to otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... sex." *Muldrow v. City of St. Louis, Missouri*, 601 U.S. 346, 356–57, 144 S. Ct. 967, 975, 218 L. Ed. 2d 322 (2024) (quoting 42 U.S.C. § 2000e-2(a)(1)). To state a claim, a plaintiff must show only that the employer "treat[ed] a person worse" because of sex "with respect to" a term or condition — but "does not have to show…the harm incurred was 'significant'…or serious, or substantial, or any similar adjective suggesting that the disadvantage to the employee must exceed a heightened bar." *Id.* at 354–355, 144 S. Ct. at 974–975. As the Court explained, "[t]o demand 'significance' is to add words — and significant words, as it were — to the statute Congress enacted." *Id.* at 355, 144 S. Ct. at 974.

Plaintiff satisfies this standard many times over. Following her August 2022 harassment complaints, her cashier rotation opportunities — and corresponding pay — were reduced forty-four percent within thirteen weeks, from twenty-five cashier shifts to fourteen, and remained significantly reduced thereafter. Doc. 12, ¶ 94. She was restricted to basic janitorial tasks while her male colleague Zan Rittenberry, in the same position, was permitted to perform skilled work without scrutiny. Doc. 12, ¶ 117. She was subjected to a check-in and check-out requirement not imposed on other employees. Doc. 12, ¶ 116. She received a negative performance review inconsistent with her prior consistently positive reviews, issued by a supervisor who had never previously supervised her, days after a two-hour interrogation by Costco's employment lawyer.

Doc. 12, ¶¶ 97, 99–100. She was suspended on October 1, 2025, for FMLA-qualifying absences, with four disciplinary actions issued within three months of the EEOC's determination against Costco. Doc. 12, ¶¶ 105–106. And years earlier, Costco's deliberate indifference to Wiggins' harassment forced her to demote herself from Cashier to Maintenance Assistant — the only applicant for a position so undesirable — resulting in reduced pay and status. Doc. 12, ¶ 29.

These adverse actions do not exist in a vacuum. While they independently support Plaintiff's hostile work environment and retaliation claims, they are equally the product of sex discrimination — because none of them would have happened to a man. Plaintiff was targeted for harassment, assaulted, ignored, demoted, underpaid, restricted, scrutinized, and ultimately suspended because she is a woman who refused to be silent about what a male supervisor did to her and what Costco allowed to continue for over a decade. Doc. 12, ¶¶ 24, 29, 79, 94, 105–106, 115, 117, 148. Wiggins — the male harasser — was retained, promoted, and protected throughout that same period. Doc. 12, ¶ 148. The causal thread running through every adverse action is Plaintiff's sex: she was harassed because she is female, her complaints were dismissed because she is female, and the consequences of Costco's deliberate indifference fell entirely on her — not on the male employee whose conduct caused them. That is precisely the kind of worse treatment "because of ... sex" that Title VII prohibits. *Muldrow*, 601 U.S. at 354, 144 S. Ct. at 974. But for Plaintiff's sex, none of this happens.

As this Court held, a Title VII plaintiff "does not have to prove her case in the complaint, and she has asserted a plausible claim for sex discrimination." *Luffman*, 2026 WL 884665, at *3.

### III. PLAINTIFF'S RETALIATION CLAIM SURVIVES

The elements of a Title VII retaliation claim are (1) the plaintiff engaged in protected activity, (2) the employer took an adverse action against her, and (3) a causal connection exists between the adverse action and the protected activity. *Strothers v. City of Laurel*, 895 F.3d 317, 327–28 (4th Cir. 2018). Defendant does not challenge elements one or three, and only challenges element two in part.

Costco partially moves to dismiss the Title VII retaliation claim only as to six alleged adverse actions set out in the First Amended Complaint. Doc. 12, ¶ 141(d)–(k). Costco concedes that the reduction of cashier opportunities, receipt of write-ups, suspension, and threat of termination meet the pleading standard for adverse action. Doc. 12, ¶ 141(a), (i). None of its arguments as to the remaining six categories justify a partial dismissal at this stage.

The Supreme Court held that a plaintiff must show "a reasonable employee would have found the challenged action materially adverse," meaning it "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68, 126 S. Ct. 2405, 2415 (2006) (affirming that reassignment from forklift duty to standard track laborer tasks and a 37-day suspension without pay were jury questions on adverse action). Courts further recognize that "[t]he cumulative impact of retaliatory acts may become actionable even though the actions would be de minimis if considered in isolation." *Doe v. Morgan State Univ.*, 544 F. Supp. 3d 563, 585 (D. Md. 2021). The complaint pleads exactly that — a cumulative pattern of retaliatory acts, each of which is actionable independently and overwhelmingly so in combination.

17

## IV.  PLAINTIFF'S FMLA RETALIATION CLAIM SURVIVES

Costco does not move to dismiss Plaintiff's FMLA interference claim—it only moves to dismiss the FMLA retaliation claim.  To establish a prima facie case of FMLA retaliation, "the plaintiff must show that [1] [s]he engaged in protected activity, that [2] the employer took adverse action against [her], and [3] that the adverse action was causally connected to the plaintiff's protected activity." *Cline v. Wal-Mart Stores, Inc.*, 144 F.3d 294, 301 (4th Cir. 1998)(citing *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 457 (4th Cir. 1989)). *See also Cscismann v. Sallada*, 211 F. App'x 163, 167-168 (4th Cir. 2006) (unpublished) (citing *Munday v. Waste Mgmt. of N. Am., Inc.*, 126 F.3d 239, 242 (4th Cir. 1997)).

Costco only takes issue with the adverse action element and does not dispute the other two. "Close temporal proximity can demonstrate causation, an element of [plaintiff's] prima facie case of retaliation." *Cole v. Family Dollar Stores of Maryland Inc.*, 811 F. App'x 168, 174 (4th Cir. 2020) (unpublished) (*citing Waag v. Sotera Defense Sols., Inc.*, 857 F.3d 179, 192 (4th Cir. 2017)("For purposes of establishing a prima facie case, close temporal proximity between activity protected by the statute and an adverse employment action may suffice to demonstrate causation.")(citing *Price v. Thompson*, 380 F.3d 209, 213, *abrogated on other grounds by Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013))).

Costco's sole argument is that Plaintiff failed to allege who made the suspension decision and whether that person knew of her September 25, 2025 FMLA request. The complaint directly refutes this.  The complaint alleges that [t]he three October 1, 2025 counseling notices were issued by Keith Napolitano and Kristi Denis.  Doc. 12, ¶ 107.  It further alleges that Napolitano had

18

knowledge of all of Plaintiff's complaints, had knowledge of her EEOC Charge and was interviewed by the EEOC investigator in 2023, and on information and belief, had knowledge of the EEOC's determination. Doc. 12, ¶ 108. The complaint also alleges that on information and belief, RVP Feely had to approve Plaintiff's October 1, 2025 suspension [and] also has direct knowledge of Plaintiff's protected activities, EEOC Charge, and Determination. Doc. 12, ¶ 111.

Moreover, the complaint alleges a six-day window between the protected activity, Plaintiff's FMLA request, and the suspension — a temporal proximity that, on its own, is powerful circumstantial evidence of causation at the pleading stage. Doc. 12, ¶ 121.

Plaintiff remains employed at Costco and the "continuing discipline" she faces will be more appropriately addressed at summary judgment after discovery on a complete factual record. Continuing discipline and continuing retaliation are issues of fact. There is no basis to dismiss the FMLA retaliation claim where the complaint alleges a clear pattern of Costco actively trying to discipline and suspend her, and the Court, drawing all reasonable inferences in Plaintiff's favor, can easily infer the end goal for repeated write ups followed by a disciplinary suspension is to fire Plaintiff in retaliation for her protected activity under Title VII and in retaliation for exercising her FMLA rights.

Finally, as to the FMLA claim, Costco's only two authorities – *Wright v. Southwest Airlines*, 319 F. App'x 232, 233 (4th Cir. 2009) (unpublished) and *Tankesley v. Vidal*, No. 1:21-cv-1448, 2023 WL 4273763 n. 68 (E.D. Va. June 29, 2023) (plaintiff did not assert an FMLA claim) – were decided at summary judgment, not on a motion to dismiss. Plaintiff's FMLA claim should survive.

19

## **CONCLUSION**

Wherefore, Plaintiff requests that their Amended Consent Motion for Extension of Time is granted [Doc. 22], and Plaintiff respectfully request that this response be withdrawn and that they can file their more fully detailed response in the time allowed

Alternatively, for the foregoing reasons, Plaintiff respectfully requests that Costco's motion to dismiss be denied.

Respectfully submitted this the 16th day of June, 2026.

TIN, FULTON, WALKER & OWEN, PLLC

/s/ Jennifer D. Spyker
Jennifer D. Spyker (N.C. Bar #46048)
301 East Park Avenue
Charlotte, NC  28203
Tel.:    704-338-1220
Fax:    704-338-1312
Email: jspyker@tinfulton.com

*Attorneys for Plaintiff*

DAGGETT SHULER,
ATTORNEYS AT LAW

/s/Benjamin P. Winikoff
Benjamin P. Winikoff (49625)
2140 Country Club Road
Winston-Salem, NC 27104
Phone: (336) 464-0862
Facsimile: (336) 464-0864
Email: bwinikoff@daggettshulerlaw.com

20

**CERTIFICATE OF WORD COUNT**

The undersigned hereby certifies that this brief contains less than 6,250 words, including the body of the brief, headings, and footnotes and excluding the caption, signature line, and certificate of service in accordance with Rule 7.3(d)(1) of the Local Rules of Civil Practice of the United States District Court for the Middle District of North Carolina. In making this certification, the undersigned has relied upon the word count feature provided by word-processing software.

TIN, FULTON, WALKER & OWEN, PLLC

/s/ Jennifer D. Spyker
Jennifer D. Spyker (N.C. Bar #46048)
301 East Park Avenue
Charlotte, NC  28203
Tel.:    704-338-1220
Fax:    704-338-1312
Email: jspyker@tinfulton.com

21

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing document was served electronically upon the following via the CM/ECF system:

Pamela S. Duffy
Ellis & Winters, LLP
PO Box 2752
Greensboro, NC 27402
Pamela.duffy@elliswinters.com

Frederick T. Smith
Seyfarth Shaw, LLP
300 South Tryon Street
Suite 400
Charlotte, NC 28202
fsmith@seyfarth.com

Andrew McKinley
Bailey G. Green
Seyfarth Shaw, LLP
1075 Peachtree St., N.E.
Suite 2500
Atlanta, GA 30309
amckinley@seyfarth.com
bgreen@seyfarth.com
*Attorneys for Costco*

This the 16th day of June, 2026.

TIN, FULTON, WALKER & OWEN, PLLC

/s/ Jennifer D. Spyker_____
Jennifer D. Spyker (N.C. Bar #46048)
301 East Park Avenue
Charlotte, NC  28203
Tel.:    704-338-1220
Fax:    704-338-1312
Email: jspyker@tinfulton.com

22