**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**
**Civil Action No. 1:26-CV-162**

| | |
|---|---|
| JESSICA M. GEORG, | |
| Plaintiff, | **PLAINTIFF'S AMENDED RESPONSE IN OPPOSITION TO COSTCO'S PARTIAL MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT** |
| v. | |
| COSTCO WHOLESALE CORPORATION, | |
| Defendant. | |

Plaintiff, through counsel, hereby files her amended response to Costco's Partial Motion to Dismiss her Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure [Doc 15]. For the reasons below, the Motion should be denied.

## INTRODUCTION

Plaintiff has worked at Costco's Winston-Salem warehouse for over thirteen years. For much of that time, she was sexually harassed and assaulted by a male supervisor, reported it repeatedly to management, and watched Costco do nothing — until she filed an EEOC charge and the EEOC found reasonable cause that Costco had violated Title VII. What followed was worse: a documented, management-directed campaign of retaliation that reduced her pay, restricted her duties, silenced her attempts to respond to a negative performance review, escalated to approximately ten disciplinary notices, and culminated

in a suspension issued six days after she requested FMLA leave for the PTSD Costco's deliberate indifference exacerbated. The motion should be denied.

## FACTS

### I. Plaintiff and Her Employment

Plaintiff has worked continuously for Costco Wholesale Corporation at its Winston-Salem, North Carolina warehouse (Store #361) since November 29, 2012. She started as a seasonal, part-time Cashier Assistant and became a permanent employee on December 26, 2012. Throughout her tenure, she has performed her duties competently and professionally and has consistently received positive annual performance reviews. Doc. 12, ¶¶ 1-2; 14-15; 17-18.

### II. David Wiggins' Decade-Long Pattern of Sexual Harassment

David Wiggins worked at Costco's Winston-Salem warehouse beginning around 2006 and was later promoted to Front-End Supervisor, giving him supervisory authority over female employees, including Plaintiff. Despite a documented, decade-long pattern of sexual-harassment complaints—known to Costco's General Managers, Assistant General Managers, and other supervisors—Costco retained and promoted Wiggins and allowed him to continue exercising that authority throughout his tenure. Doc. 12, ¶¶ 23- 24.

Costco received at least ten sexual harassment complaints or reports against Wiggins from at least seven female employees dating back to summer 2011—before

Plaintiff was hired. These included: (1) a summer 2011 report of a sexual comment in the warehouse parking lot, with no discipline; (2) an October 2012 report of repeated sexual overtures, with no discipline; (3) Plaintiff's August 10, 2017 report of sexual assault and ongoing harassment, with no investigation and no discipline; (4) a September 2020 report by a former employee that Wiggins had sexually taken advantage of her, along with Plaintiff's renewed September 2020 reports of ongoing harassment and the 2017 assault— after which Wiggins received only informal verbal coaching despite admitting he told Plaintiff she had a "fat ass"; and (5) August 2022 complaints from three additional female employees, which led to identification of two more women who reported harassment but had not previously come forward. Doc. 12, ¶ 25.

### III. Wiggins' Harassment of Plaintiff

From 2012 through March 2023, Wiggins subjected Plaintiff to persistent, unwelcome sexual harassment at work, including: telling her when she was hired that he could help her "get some strange"; repeatedly commenting that she had a "fat ass" (a statement he admitted making during Costco's 2020 investigation) and a "fat pussy"; repeatedly telling her, "I would fuck you so good"; and making explicit remarks suggesting she preferred sexual encounters with Latino coworkers. Doc. 12, ¶ 27.

The harassment became so severe and pervasive that on or about August 15, 2016, Plaintiff voluntarily demoted herself from Front End Cashier to a part-time Maintenance Assistant — a position so undesirable she was the only person in the warehouse to apply

for it — specifically to avoid Wiggins. The demotion reduced her pay and employment status. Doc. 12, ¶ 29.

On the evening of August 9, 2017, Plaintiff attended a social gathering at a coworker's home. Wiggins arrived uninvited and sexually assaulted her in the early morning hours of August 10, 2017. Within hours, Plaintiff reported the assault—and Wiggins's ongoing workplace harassment—to Assistant General Manager Tara Coltman and Front-End Manager Chase Pullen during her shift. Coltman and Pullen told Plaintiff that because the assault occurred off-site, Costco could do nothing. Costco conducted no investigation and imposed no discipline, despite its own Sexual Harassment Policy, Section 2.6, which expressly states harassment "is not limited to the physical workplace" and identifies "sexual assault" as prohibited conduct. Doc. 12, ¶¶ 31-33.

In September 2020, during an investigation into another employee's complaint, Plaintiff again reported Wiggins's ongoing harassment and the August 2017 assault to then-General Manager Alfredo Rodriguez. Rodriguez gave Wiggins only informal verbal coaching for a single comment Wiggins admitted making. That response violated Costco's own policy: Section 11.3 treats sexual harassment as Cause for Termination requiring no prior Counseling Notices and, if termination is not imposed, requires a permanently retained Employee Counseling Notice. Wiggins received neither. Doc. 12, ¶¶ 34- 35.

## IV. Plaintiff's 2022 Complaints and Costco's Response

In July 2022, while Plaintiff was cleaning a leaking watermelon display, Wiggins stood over Plaintiff and a young Latino coworker and made sexually explicit comments stating that Plaintiff and the coworker would be a compatible sexual match because Plaintiff "liked that Latin dick" and "likes them young." Doc. 12, ¶ 40.

On August 14, 2022, Receiving Manager Jessie Rodriguez — wife of former GM Alfredo Rodriguez — emailed GM Napolitano along with the entire AGM distribution list, recommending they all "sit down & discuss Jessica and take notes," and warning that a recent conversation with Plaintiff "didn't seem that big of a deal" but that Plaintiff "took it & ran with it." Doc. 12, ¶ 42.

On August 20, 2022, Plaintiff met with GM Napolitano and reported that Wiggins had raped her five or six years earlier, had subjected her to repeated sexually explicit comments throughout her employment, and had similarly harassed other women—conduct management had been "sweeping … under the rug." In a second meeting that day, Napolitano acknowledged that harassment allegations against Wiggins dated back to at least 2010 and spanned multiple years yet minimized the pattern by pointing to gaps between complaints, a recantation, and that Plaintiff's report "involved alcohol." Napolitano did not indicate he would contact Human Resources, suspend Wiggins, or take any remedial action. Doc. 12, ¶¶ 45; 47. On August 23, 2022, Plaintiff escalated the matter to RVP Tom Feely via both email and voicemail. Feely returned Plaintiff's call the same day. On August 25, 2022, Plaintiff was interviewed by Carlos Corniel of Human Resources

5

who warned that if she spoke with coworkers about harassment, they would discipline her, which she perceived as a direct attempt to silence her and those who reported sexual harassment. Doc. 12, ¶¶ 50; 52. On August 21, 2022, Costco presented Plaintiff with a confidentiality acknowledgment requiring her keep the investigation confidential under threat of discipline up to and including termination. Doc. 12 ¶ 48.

On November 18, 2022—more than twelve weeks after Plaintiff's initial interview—Costco retained outside counsel Stephanie Delatorre of Seyfarth Shaw LLP to conduct a second investigative interview. Delatorre began by asking whether Plaintiff had retained counsel and warning that Plaintiff's statements were not protected by attorney-client privilege. Delatorre then focused on the August 2017 sexual assault, pressing Plaintiff about what and how much she drank, what she was wearing, and how and where Wiggins first touched her. The interview left Plaintiff so overwhelmed and distraught that she asked to be placed on the sick log for the next day before leaving the warehouse. Doc. 12, ¶¶ 55-57.

## V. Plaintiff's PTSD Diagnosis

Plaintiff has a documented history of PTSD. Wiggins' harassment and Costco's inaction triggered and worsened her symptoms. On or about December 13, 2022, she resumed treatment, and her diagnosis was later updated to chronic PTSD. Since December 2022, she has remained under continuous psychiatric and therapeutic care. Her symptoms—including panic attacks, nightmares, hypervigilance,

dissociation/derealization, impaired concentration, intrusive thoughts, and avoidance—have been severe enough to require multiple periods of medical leave. Doc. 12, ¶¶ 66-67; 68, 70.

## VI. Wiggins' Termination

Wiggins was not terminated until March 2023—more than eleven years after the first documented complaint—and only after Plaintiff filed an EEOC charge in December 2022 and Costco's outside counsel substantiated complaints from multiple female employees. Upon information and belief, Costco terminated Wiggins for sexually harassing multiple female employees, for dishonesty during investigative interviews, and for having sex with a female employee in the warehouse bathroom while on duty. Doc. 12, ¶ 26.

## VII. Retaliation Following Plaintiff's Protected Activity

**Reduction in Cashier Hours.** Before her August 2022 complaints, Plaintiff was regularly assigned to work the Front End as a Cashier—at a higher rate of pay than her Maintenance position. After she complained, those higher-paid cashier shifts dropped sharply: in the 13 weeks before her complaint, she worked as a Cashier 25 times; in the 13 weeks after, only 14 times—a 44% reduction. Doc. 12, ¶ 94.

**Negative Performance Evaluation.** On November 23, 2022 — just five days after Plaintiff's two-hour interrogation by Costco's outside counsel regarding her sexual assault

7

— Plaintiff received her 2022 Employee Performance Review containing negative comments issued by AGM Jason Devens, who had just been promoted on or about November 11, 2022, and had never previously supervised Plaintiff. Doc. 12, ¶¶ 97, 100. Unlike Plaintiff's previous consistently positive reviews, the 2022 review contained multiple negative and internally contradictory comments. Doc. 12, ¶ 99. When Plaintiff attempted to make notations on the review, Devens discouraged her, stating that making comments could be viewed negatively if she applied for a different position or transfer in the future — despite the review containing a designated section for "Employee Comments." Doc. 12, ¶¶ 103–104.

**Heightened Scrutiny and Limitation of Work Duties.** In September 2023, Plaintiff was told she was required to check in and out at the front end for her breaks and lunches — a requirement not applied to other employees. Doc. 12, ¶¶ 115-116. In December 2023, Napolitano monitored Plaintiff's surveillance while she performed a maintenance repair and then, with AGM Reid, micromanaged Plaintiff and instructed her to perform only basic janitorial tasks. Plaintiff pointed out that her male colleague, Zan Rittenberry, was not skilled in maintenance but was permitted to perform skilled work without question or scrutiny. Doc. 12, ¶ 117. In January 2024, Napolitano warned Plaintiff to be careful about reporting ethics violations when Plaintiff had simply reported a potential violation to the appropriate manager. Doc. 12, ¶ 118.

**Escalating Discipline and Suspension.** Between April 2024 and October 2025, Costco issued Plaintiff approximately ten Employee Counseling Notices for absences and tardiness directly caused by her FMLA-qualifying PTSD and the side effects of her prescribed medications, culminating in a suspension on October 1, 2025. Doc. 12, ¶¶ 105, 120. Four of these disciplinary actions — including the October 1 suspension — occurred within three months of the EEOC's July 11, 2025 determination that Costco had subjected Plaintiff to sexual harassment and retaliation. Doc. 12, ¶ 106. The three October 1, 2025 counseling notices were issued by GM Keith Napolitano and AGM Kristi Denis. Napolitano had knowledge of all of Plaintiff's complaints, had knowledge of her EEOC Charge, was interviewed by the EEOC investigator in 2023, and, on information and belief, had knowledge of the EEOC's determination. Doc. 12, ¶¶ 107–108. On information and belief, RVP Feely had to approve Plaintiff's October 1, 2025 suspension and also has direct knowledge of Plaintiff's protected activities, EEOC Charge, and Determination. Doc. 12, ¶ 111.

## VIII. FMLA Interference and Retaliation

Plaintiff has been continuously treated for chronic PTSD since December 2022, which constitutes a serious health condition under the FMLA. Doc. 12, ¶¶ 157–158. Costco had actual knowledge of Plaintiff's FMLA-qualifying condition since December 2022, when Plaintiff was placed on medical leave for PTSD, and was aware that Plaintiff's absences and tardiness were caused by this condition and its treatment. Doc. 12, ¶¶ 110,

122. Days after Plaintiff's September 25, 2025 explicit FMLA request, Costco suspended Plaintiff on October 1, 2025, citing disciplinary violations that included FMLA-qualifying absences and tardiness. Doc. 12, ¶¶ 121, 162. Costco's own Section 6.4, Footnote 44 of the Employee Agreement states that "FMLA, state law leaves, or other approved leaves and absences will not count as instances of absence." Doc. 12, ¶ 113.

### IX. EEOC Proceedings

On December 21, 2022, Plaintiff filed a Charge of Discrimination with the EEOC *pro se*, Charge Number 435-2023-00254, alleging sex discrimination, sexual harassment, and retaliation. Doc. 12, ¶ 7. On July 11, 2025, the EEOC issued a determination finding reasonable cause to believe that Costco violated Title VII by subjecting Plaintiff to sexual harassment based on her sex and by retaliating against Plaintiff for engaging in protected activity. The EEOC also determined that Costco subjected a class of similarly aggrieved female employees to a sexually hostile work environment at the Winston-Salem store. Doc. 12, ¶ 8. On November 18, 2025, the EEOC issued Plaintiff a Notice of Right to Sue, and Plaintiff timely filed this action on February 13, 2026. Doc. 12, ¶¶ 9–10.

### ARGUMENT

### I. STANDARD OF REVIEW: COSTCO'S AUTHORITY IS OVERWHELMINGLY INAPPLICABLE AT THE PLEADING STAGE

As a threshold matter, 11 of the 19 cases Costco cites in support of its motion were decided at summary judgment—on fully developed evidentiary records—not on the

10

pleadings.[1]  These authorities carry little, if any, persuasive weight on a Rule 12(b)(6)

motion, where courts accept all well-pleaded allegations as true, and the question is simply

whether a plausible claim has been stated.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).[2]  Unlike summary

judgment, at this stage, courts assume the truth of the factual allegations contained in the

complaint and draw all reasonable inferences in the plaintiff's favor.  *See  Twombly*, 550

U.S. at 555–56 (2007); *Langford v. Joyner*, 62 F.4th 122, 124 (4th Cir. 2023).

---

[1] *Bagwell v. Downtown Parternship of Baltimore, Inc.*, No. CV ELH-18-1786, 2020 WL 247293 (D. Md. Jan. 15, 2020)(granting summary judgment on Title VII claims); *Coleman v. Schneider Elec. USA, Inc.*, 755 F. App'x 247, 250 (4th Cir. 2019)(unpublished) (affirming summary judgment on Title VII claims); *Hairston v. Barnes*, No. 1:15CV1100, 2019 WL 13549655 (M.D.N.C. Mar. 15, 2019)(granting summary judgment on Title VII claims); *Haynes v. Waste Connections, Inc.*, 922 F.3d 219 (4th Cir. 2019) (reversing summary judgment on Title VII race discrimination and retaliation claims where genuine issues of material fact existed); *Holland v. Washington Homes, Inc.*, 487 F.3d 208 (4th Cir. 2007) (affirming summary judgment on Title VII race discrimination and retaliation claims); *Magassouba v. Prince George's Cnty.*, 773 F. Supp. 3d 196 (D. Md. 2025) (granting in part and denying in part summary judgment on Title VII claims); *Odom v. CVS Caremark Corp.*, No. 3:14-0456-MGL, 2016 WL 4536341 (D.S.C. Aug. 31, 2016) (granting summary judgment on Title VII claims); *Pearsall v. Child Advoc. Comm'n of the Lower Cape Fear, Inc.*, No. 7:98CV200-BR, 2000 WL 33682693 (E.D.N.C. Feb. 15, 2000) (granting in part and denying in part summary judgment on Title VII claims); *Tankesley v. Vidal*, No. 1:21-CV-1448, 2023 WL 4273763 (E.D. Va. June 29, 2023) (granting summary judgment on Rehabilitation Act claims); *Wandji v. Wilkie*, No. 2:18-cv-03036-RMG-MGB, 2020 WL 7647552 (D.S.C. Nov. 9, 2020) (recommending grant of summary judgment on Title VII claims); *Wright v. Sw. Airlines*, 319 F. App'x 232 (4th Cir. 2009) (unpublished) (affirming summary judgment on FMLA retaliation claim).

[2] Although Costco's Partial Motion to Dismiss references Rule 12(b)(1) and 12(b)(6) [Doc. 15], its brief only addresses arguments with citation to Rule 12(b)(6) [Doc. 16].  Local Rule 7.3(b) requires, "[a]ll motions shall state with particularity the grounds therefor, shall cite any statute or rule of procedure relied upon, and shall set forth the relief or order sought." Fed. R. Civ. P. 7(b)(1) requires motions to state with particularity the grounds for seeking the order and the relief sought. Therefore, Plaintiff only addresses Rule 12(b)(6). Costco should not be permitted to raise new arguments on Reply.

## II. PLAINTIFF EXHAUSTED HER ADMINISTRATIVE REMEDIES AND ADEQUATELY PLED TITLE VII SEX DISCRIMINATION

### A. Plaintiff Exhausted Her Administrative Remedies

The scope of a plaintiff's right to file a federal lawsuit is determined by the charge's contents. *Luffman v. Yadkin Cnty. Bd. of Educ.*, No. 1:25-CV-942, 2026 WL 884665, at \*2 (M.D.N.C. Mar. 31, 2026) (quoting *Sydnor v. Fairfax Cnty.*, 681 F.3d 591, 593 (4th Cir. 2012)). This Court recently reaffirmed that "EEOC charges need not be as detailed as complaints initiating lawsuits," that a plaintiff need not "lay out every single discriminatory act in the charge," and that "[s]o long as a plaintiff's claims in her judicial complaint are reasonably related to her EEOC charge and can be expected to follow from a reasonable administrative investigation, she may include those claims in her lawsuit." *Luffman*, 2026 WL 884665, at \*3 (quoting *Sydnor*, 681 F.3d at 594 (cleaned up)). Moreover, "[d]ocuments filed by an employee with the EEOC should be construed, to the extent consistent with permissible rules of interpretation, to protect the employee's rights and statutory remedies," and construing ambiguities against a Title VII plaintiff "would undercut the remedial framework Congress intended." *Id*. (quoting *Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 406 (2008)).

For example, the Fourth Circuit found exhaustion when both the EEOC charge, and the federal complaint involved claims of discriminatory action based on different discriminatory conduct by the same actor on the same grounds of discrimination. *Smith v. First Union National Bank*, 202 F.3d 234, 247-249 (4th Cir. 2000) (finding that EEOC

12

charge alleging that management retaliated against plaintiff by chastising her and threatening to terminate her employment for consulting with counsel was reasonably related to a complaint alleging that management retaliated against her by forcing her to work in an undesirable position and not offering other positions). *See also*, *EEOC v. Gen. Elec. Co.*, 532 F.2d 359, 366 (4th Cir. 1976) ("So long as the new discrimination arises out of the reasonable investigation of the charge filed, it can be...followed...by a civil suit, without the filing of a new charge on such claim of discrimination.").

Several cases illustrate this "reasonably related" principle. In *Sydnor*, a disabled nurse indicated in a questionnaire accompanying her EEOC charge that she had sought authorization to perform light-duty work. *Sydnor*, 681 F.3d at 592. Later, in a lawsuit alleging a violation of the Americans with Disabilities Act, she sought a different accommodation – namely, authorization for full-duty work with the assistance of a wheelchair. *Id.* at 594. The Court of Appeals noted that this case was analogous to *Smith v. First Union National Bank* because the plaintiff's underlying claim of disability discrimination did not change, even though the form of the alleged discrimination changed. *Id.* at 595. Therefore, the Court found this distinction to be insignificant, reasoning that the EEOC questionnaire gave the nurse's employer "ample notice of the allegations against it" *Id*.

Costco argues Plaintiff's sex discrimination claim (Count III) was not included in her EEOC charge and is therefore unexhausted. This argument is factually wrong. Costco filed Plaintiff's EEOC Charge at Doc. 18 — it plainly alleges "Discrimination based on

13

Retaliation, Sex" and states: "I believe that I have been discriminated against because of my sex, female, in violation of Title VII of The Civil Rights Act of 1964, as amended."

The First Amended Complaint alleges three categories of sex discrimination that were raised with the EEOC, investigated, and are squarely within the scope of what the EEOC could reasonably have been expected to investigate arising from a charge of sex discrimination. First, Plaintiff provided the EEOC with specific examples of micromanaging and heightened scrutiny not equally applied to her coworkers, in particular male workers, and raised concerns of disparate treatment based on sex. Doc. 12, ¶ 115. Those examples are pleaded in detail: in September 2023, Plaintiff was required to check in and out at the front end for her breaks and lunches — a requirement not imposed on other employees, Doc. 12, ¶ 116; and in December 2023, Napolitano and AGM Reid micromanaged Plaintiff and instructed her to perform only basic janitorial tasks, while her male colleague Zan Rittenberry — who was not skilled maintenance — was permitted to perform skilled work without question or scrutiny. Doc. 12, ¶ 117. Second, the Charge alleges a pattern of Costco ignoring Plaintiff's multiple harassment complaints to the point where she was forced to demote herself to avoid Wiggins — reducing her pay and employment status — was denied the opportunity to rotate to different positions in the store which further reduced her compensation, and received a negative performance review after reporting the harassment. Doc. 18; Doc. 12, ¶¶ 24, 26, 29, 79, 82–83, 92–94, 97, 99–100, 132(e), 141(a). Third, the complaint alleges that Wiggins — the male harasser — was retained, promoted, and protected despite sexually harassing and assaulting Plaintiff and

14

other female employees over more than a decade, while Plaintiff, the female victim, was disciplined for absences and tardiness directly connected to the PTSD caused by Wiggins' conduct and Costco's deliberate indifference to it. Doc. 12, ¶ 148. Plaintiff further alleges her numerous sexual harassment complaints were not taken seriously because she is female. Doc. 12, ¶ 149.

Like the plaintiff in the cases cited above, who listed other actions the charge did not include but was reasonably discoverable and related because they listed the same actors and types of discrimination, Plaintiff alleges other actions by the same actors and types of discrimination that her charge did not include. These allegations form the core of Count III, Doc. 12, ¶¶ 146-149, were raised during the EEOC investigation, and are precisely what a reasonable investigation into sex discrimination and retaliation would be expected to uncover and were exhausted.

### B. Plaintiff Has Adequately Pled Adverse Employment Actions and Disparate Treatment

Title VII makes it unlawful for an employer to discriminate against any individual with respect to her compensation, terms, conditions, or privileges of employment because of her sex. 42 U.S.C. § 2000e-2(a)(1). Courts "need not parse the back-and-forth of the *McDonnell Douglas* framework" in Title VII discrimination cases; "[i]t is enough that this record contains circumstantial evidence — including evidence of pretext — that would allow a jury to infer that the reason for [the adverse action] was sex discrimination." *Hollis v. Morgan State Univ.*, 153 F.4th 369, 381 (4th Cir. 2025).

Yet even applying *McDonnell Douglas*, Costco's argument fails. Costco claims Plaintiff failed to plead elements three and four of its articulation of the *prima facie* test — "(3) adverse employment action" and "(4) different treatment from similarly situated employees outside the protected class." Doc. 16, pp. 4-5 (citing *Coleman v. Md. Ct. of App.*, 626 F.3d 187, 190 (4th Cir. 2010)). Element three is addressed below. As to element four, Costco misstates the standard: a plaintiff need not identify a similarly situated comparator to establish a prima facie case of sex discrimination. The fourth element requires only that the adverse action occur "under circumstances which give rise to an inference of unlawful discrimination." *Ames v. Ohio Dep't of Youth Servs.*, 605 U.S. 303, 309, 145 S. Ct. 1540, 1545, 221 L. Ed. 2d 929 (2025); *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 512, 122 S. Ct. 992, 997, 152 L. Ed. 2d 1 (2002) ("the precise requirements of a [*McDonnell Douglas*] prima facie case can vary depending on the context and were 'never intended to be rigid, mechanized, or ritualistic'").

A comparator is one means of satisfying that, not a requirement. *Bryant v. Aiken Reg'l Med. Centers Inc.*, 333 F.3d 536, 545 (4th Cir. 2003) (employee was not required to point to similarly situated white comparators to succeed on a race discrimination claim under Title VII). Nevertheless, Plaintiff adequately pleads comparator evidence in addition to other circumstances giving rise to an inference of sex discrimination.

As to the adverse action element, the Supreme Court's decision in *Muldrow* forecloses Costco's argument. Title VII makes it unlawful for an employer "to otherwise discriminate against any individual with respect to his compensation, terms, conditions, or

privileges of employment, because of such individual's ... sex." *Muldrow v. City of St. Louis, Missouri*, 601 U.S. 346, 354, 144 S. Ct. 967, 974, 218 L. Ed. 2d 322 (2024) (quoting 42 U.S.C. § 2000e-2(a)(1)). To state a claim, a plaintiff must show only that the employer "treat[ed] a person worse" because of sex "with respect to" a term or condition — but "does not have to show…the harm incurred was 'significant'…or serious, or substantial, or any similar adjective suggesting that the disadvantage to the employee must exceed a heightened bar." *Id.* at 354–355, 144 S. Ct. at 974–975. As the Court explained, "[t]o demand 'significance' is to add words — and significant words, as it were — to the statute Congress enacted." *Id.* at 355, 144 S. Ct. at 974.

Plaintiff satisfies this standard. Following her August 2022 harassment complaints, her cashier rotation opportunities — and corresponding pay — were reduced by 44% within thirteen weeks, from twenty-five cashier shifts to fourteen, and remained significantly reduced thereafter. Doc. 12, ¶ 94. She was restricted to basic janitorial tasks while her male colleague Zan Rittenberry, in the same position, was permitted to perform skilled work without scrutiny. Doc. 12, ¶ 117. She was subjected to a check-in and check-out requirement not imposed on other employees. Doc. 12, ¶ 116. She received a negative performance review, inconsistent with her prior consistently positive reviews, from a supervisor who had never supervised her, days after a two-hour interrogation by Costco's employment lawyer. Doc. 12, ¶¶ 97, 99–100. She was suspended on October 1, 2025, for FMLA-qualifying absences, with four disciplinary actions issued within three months of the EEOC's determination against Costco. Doc. 12, ¶¶ 105–106. And years earlier,

17

Costco's deliberate indifference to Wiggins' harassment forced her to demote herself from Cashier to Maintenance Assistant — the only applicant for a position so undesirable — resulting in a reduction in pay and status. Doc. 12, ¶ 29.

These adverse actions do not exist in a vacuum. While they independently support Plaintiff's hostile work environment and retaliation claims, they are equally the product of sex discrimination — because none of them would have happened to a man. Plaintiff was targeted for harassment, assaulted, ignored, demoted, underpaid, restricted, scrutinized, and ultimately suspended because she is a woman who refused to be silent about what a male supervisor did to her and what Costco allowed to continue for over a decade. Doc. 12, ¶¶ 24, 29, 79, 94, 105–106, 115, 117, 148. Wiggins — the male harasser — was retained, promoted, and protected throughout that same period. Doc. 12, ¶ 148. The causal thread running through every adverse action is Plaintiff's sex: she was harassed because she is female, her complaints were dismissed because she is female, and the consequences of Costco's deliberate indifference fell entirely on her — not on the male employee whose conduct caused them. That is precisely the kind of worse treatment "because of ... sex" that Title VII prohibits. *Muldrow*, 601 U.S. at 354, 144 S. Ct. at 974. But for Plaintiff's sex, none of this happens.

## III.   PLAINTIFF'S TITLE VII RETALIATION CLAIM SURVIVES

The elements of a Title VII retaliation claim are (1) the plaintiff engaged in protected activity, (2) the employer took an adverse action against her, and (3) a causal connection

exists between the adverse action and the protected activity. *Strothers v. City of Laurel*, 895 F.3d 317, 327–28 (4th Cir. 2018). Defendant does not challenge elements one or three, and only challenges element two in part.

Costco partially moves to dismiss the Title VII retaliation claim only as to six alleged adverse actions set out in the First Amended Complaint. Doc. 12, ¶ 141(d)-(h), (j). Costco concedes that the reduction of cashier opportunities, receipt of write-ups, suspension, and threat of termination meet the pleading standard for adverse action. Doc. 16, p. 7. None of its arguments as to the remaining six categories justify a partial dismissal at this stage under the theory that such actions are not materially adverse.

The Supreme Court held that a plaintiff must show "a reasonable employee would have found the challenged action materially adverse," meaning it "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68, 126 S. Ct. 2405, 2415 (2006) (affirming that reassignment from forklift duty to standard track laborer tasks and a 37-day suspension without pay were jury questions on adverse action). The "material" or "significant" harm test is unique to the retaliation context. *Muldrow*, 601 U.S. at 357, 144 S.Ct. at 976 (*quoting Burlington N.*, 548 U.S. at 68, 126 S.Ct. 2405). *Accord Israelitt v. Enter. Servs. LLC*, 78 F.4th 647, 655 (4th Cir. 2023) ("[R]etaliatory adverse actions must cause significant harm to be actionable."), cert. denied, —— U.S. ——, 144 S. Ct. 1392, 218 L.Ed.2d 680 (2024); *Noonan v. Consol. Shoe Co.*, 84 F.4th 566, 575 (4th Cir. 2023)

19

(retaliatory conduct "must be 'materially adverse,' which means the plaintiff must show 'significant' harm").

In *Noonan*, the Fourth Circuit — in the context of a retaliation claim — noted that "special circumstances ... such as a unique interpersonal ... relationship between the supervisor and employee" could render an "unrealized threat of termination" sufficiently adverse to be actionable under Title VII. 84 F.4th at 575 (citation omitted); *see also Moore v. Pegasus Steel, LLC*, 2024 WL 277779, at *2 (D.S.C. Jan. 25, 2024) (finding that being presented with inaccurate disciplinary forms, and being asked to sign or risk termination, constituted an adverse employment actions). The *Noonan* Court likewise noted that mitigating circumstances or conduct, like apologizing to the employee for the unrealized threat, supporting them in its aftermath and attempting to assuage further concerns, could render an otherwise adverse action insufficient. *Id.* No mitigating circumstances are alleged here — to the contrary, the retaliation escalated with each instance of protected activity. Courts further recognize that "[t]he cumulative impact of retaliatory acts may become actionable even though the actions would be <u>de minimis</u> if considered in isolation." *Doe v. Morgan State Univ.*, 544 F. Supp. 3d 563, 585 (D. Md. 2021). The complaint pleads exactly that — a cumulative pattern of retaliatory acts, each of which is actionable independently and overwhelmingly so in combination.

The six contested actions are not petty slights or minor annoyances, but a sustained campaign. The November 23, 2022, evaluation was issued five days after Plaintiff's two-hour interrogation by Costco's outside counsel, containing critical comments inconsistent

with Plaintiff's prior consistently positive reviews. Doc. 12, ¶¶ 97–104, 141(d). It was then paired with an affirmative warning that making written comments in her own review's designated employee comment section "could be viewed negatively if she applied for a different position or transfer in the future." Doc. 12, ¶ 141(e). An evaluation deployed immediately after an investigative interrogation, specifically to chill a complaining employee's ability to seek advancement, is materially adverse, particularly where, as here, Plaintiff was also later issued ten disciplinary write ups culminating in the October 1, 2025 suspension.

Costco relies on *Wandji v. Wilkie*—a summary judgment case—for the proposition that requiring performance of additional duties that were "part of" a clinical nurse leader's role was not adverse, but that is not what the complaint alleges here. No. 218CV03036RMGMGB, 2020 WL 7647552, at *16 (D.S.C. Nov. 9, 2020). After Napolitano reviewed surveillance footage of Plaintiff performing a safety repair, he and AGM Reid summoned her and instructed her to perform only basic janitorial tasks—while her male colleague, Zan Rittenberry, "was not skilled maintenance but permitted to focus on skilled work without question or scrutiny." Doc. 12, ¶¶ 117, 141(h). *Burlington N.* held that the issue of whether reassignment of duties was materially adverse was a jury question, not a pleading deficiency. 548 U.S. 53, 71, 126 S. Ct. 2405, 2417, 165 L. Ed. 2d 345 (2006).

Costco relies on *Hairston v. Barnes*, another summary judgment case, for the proposition that monitoring "without more" is not materially adverse—but the monitoring here was not passive. No. 1:15cv1100, 2019 WL 13549655, at *11 (M.D.N.C. Mar. 15,

2019).  It was used to impose the janitorial restriction, to threaten Plaintiff with termination if she spoke with other female victims of Wiggins' harassment, and to silence access to corroborating witnesses. Doc. 12, ¶¶ 48, 52, 73, 85, 141(f), (g). And, the selectively imposed check-in requirement—not applied to other employees—is targeted, escalating scrutiny that would dissuade a reasonable employee from engaging in protected activity. Doc. 12, ¶¶ 115–116, 141(j).

Each of the six challenged actions was taken by managers—Napolitano, Reid, Devens, and Feely—who each possessed direct, documented knowledge of Plaintiff's protected activity (Doc. 12, ¶ 141), and their cumulative effect of lost pay, silencing, surveillance, disciplinary suspension, and threatened termination would plainly dissuade a reasonable employee from pursuing a charge of discrimination.  The temporal pattern is also unmistakable: the retaliation began immediately after Plaintiff's August 2022 complaints, intensified after she filed her EEOC charge in December 2022, and four disciplinary actions— including the October 1, 2025 suspension—occurred within three months of the EEOC's July 11, 2025 cause determination. *Id.*, ¶¶  94, 97-104, 105-114, 142(a)).  These actions are designed to dissuade a reasonable employee from pursuing or continuing to pursue a charge of discrimination or harassment.

Costco also moves to dismiss allegation ¶ 141(k) — that retaliation continued "in other ways which are ongoing" — as insufficiently pled. Doc. 16 at 7. Plaintiff remains employed at Costco, and the "ongoing" retaliation she faces will be more appropriately addressed at summary judgment after discovery on a complete factual record, as retaliation

22

continues even after the Complaint was filed. The Complaint must be evaluated as a whole rather than isolating and dismissing individual allegations.

## IV. PLAINTIFF'S FMLA RETALIATION CLAIM SURVIVES

Costco does not move to dismiss Plaintiff's FMLA interference claim—it only moves to dismiss the FMLA retaliation claim. To establish a prima facie case of FMLA retaliation, "the plaintiff must show that [1] [s]he engaged in protected activity, that [2] the employer took adverse action against [her], and [3] that the adverse action was causally connected to the plaintiff's protected activity." *Cline v. Wal-Mart Stores, Inc.*, 144 F.3d 294, 301 (4th Cir. 1998) (citation omitted). Costco only takes issue with element three and does not dispute the other two.

"Close temporal proximity can demonstrate causation, an element of [plaintiff's] prima facie case of retaliation." *Cole v. Family Dollar Stores of Maryland Inc.*, 811 F. App'x 168, 174 (4th Cir. 2020) (unpublished) (*citing Waag v. Sotera Defense Sols., Inc.*, 857 F.3d 179, 192 (4th Cir. 2017). As the Fourth Circuit has long held, although timing evidence "far from conclusively establishes the requisite causal connection, it certainly satisfies the less onerous burden of making a prima facie case of causality." *Yashenko v. Harrah's NC Casino Co.*, LLC, 446 F.3d 541, 551 (4th Cir. 2006)

On September 25, 2025, Plaintiff requested FMLA leave. Six days later, on October 1, 2025, she was suspended. The closeness in time—6 days—between the protected activity and the adverse action satisfies the "less onerous burden of making a prima facie case of causality." *Yashenko*, 446 F.3d at 551 (citation omitted).

23

Costco seeks to convince this Court to add a new element to the prima facie case at the pleadings stage to suggest Plaintiff also must know and allege who made the suspension decision and whether that person knew of her September 25, 2025 FMLA request. Doc. 16, p. 9. The *Tankesley v. Vidal*, No. 1:21-CV-I448, 2023 WL 4273763, (E.D. Va. June 29, 2023) case cited by Costco did not involve an FMLA claim. The other, *Wright v. Sw. Airlines*, 319 F. App'x 232 (4th Cir. 2009) (unpublished) was decided at summary judgment, not on a motion to dismiss. This proposition is not supported by caselaw and should not be used as the basis to grant a Rule 12(b)(6) motion.

Further, the allegation is factually inaccurate. The complaint refutes the lack of knowledge allegation, providing direct and circumstantial evidence that the decision makers knew of her FMLA leave. The complaint alleges that the three October 1, 2025 counseling notices were issued by Keith Napolitano and Kristi Denis. Doc. 12, ¶ 107. It further alleges that Napolitano had knowledge of all of Plaintiff's complaints, had knowledge of her EEOC Charge, and was interviewed by the EEOC investigator in 2023, and on information and belief, had knowledge of the EEOC's determination; and counseling notices and discipline are issued at Napolitano's direction. Doc. 12, ¶ 108, 110. The complaint also alleges that on information and belief, RVP Feely had to approve Plaintiff's October 1, 2025 suspension [and] also has direct knowledge of Plaintiff's protected activities, EEOC Charge, and Determination. Doc. 12, ¶ 111. The Court can infer GM Napolitano knew of her FMLA request.

24

Moreover, the complaint alleges a six-day window between the protected activity, Plaintiff's FMLA request, and the suspension — a temporal proximity that, on its own, is powerful circumstantial evidence of causation at the pleading stage. Doc. 12, ¶ 121.

Plaintiff remains employed at Costco, and the "continuing discipline" she faces moving forward are issues of fact more appropriately addressed at summary judgment after discovery. There is no basis to dismiss the FMLA retaliation claim where the complaint alleges a clear pattern of Costco actively trying to discipline and suspend her, and the Court, drawing all reasonable inferences in Plaintiff's favor, can easily infer the end goal for repeated write ups followed by a disciplinary suspension is to fire Plaintiff in retaliation for her protected activity under Title VII and in retaliation for exercising her FMLA rights.

## **CONCLUSION**

Plaintiff respectfully requests that Costco's partial motion to dismiss be denied.

Respectfully submitted this the 29th day of June, 2026.

TIN, FULTON, WALKER & OWEN, PLLC

/s/ Jennifer D. Spyker_____
Jennifer D. Spyker (N.C. Bar #46048)
301 East Park Avenue
Charlotte, NC  28203
Tel.:   704-338-1220
Fax:   704-338-1312
Email: jspyker@tinfulton.com

25

DAGGETT SHULER,
ATTORNEYS AT LAW

/s/Benjamin P. Winikoff
Benjamin P. Winikoff (49625)
2140 Country Club Road
Winston-Salem, NC 27104
Phone: (336) 464-0862
Facsimile: (336) 464-0864
Email: bwinikoff@daggettshulerlaw.com

*Attorneys for Plaintiff*

26

**CERTIFICATE OF WORD COUNT**

The undersigned hereby certifies that this brief contains less than 6,250 words, including the body of the brief, headings, and footnotes and excluding the caption, signature line, and certificate of service in accordance with Rule 7.3(d)(1) of the Local Rules of Civil Practice of the United States District Court for the Middle District of North Carolina. In making this certification, the undersigned has relied upon the word count feature provided by word-processing software.

TIN, FULTON, WALKER & OWEN, PLLC

/s/ Jennifer D. Spyker_____
Jennifer D. Spyker (N.C. Bar #46048)
301 East Park Avenue
Charlotte, NC  28203
Tel.:   704-338-1220
Fax:   704-338-1312
Email: jspyker@tinfulton.com

27

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing document was served electronically upon the following via the CM/ECF system:

Pamela S. Duffy
Ellis & Winters, LLP
PO Box 2752
Greensboro, NC 27402
Pamela.duffy@elliswinters.com

Frederick T. Smith
Seyfarth Shaw, LLP
300 South Tryon Street
Suite 400
Charlotte, NC 28202
fsmith@seyfarth.com

Andrew McKinley
Bailey G. Green
Seyfarth Shaw, LLP
1075 Peachtree St., N.E.
Suite 2500
Atlanta, GA 30309
amckinley@seyfarth.com
bgreen@seyfarth.com
*Attorneys for Costco*

This the 29th day of June, 2026.

TIN, FULTON, WALKER & OWEN, PLLC

/s/ Jennifer D. Spyker_____
Jennifer D. Spyker (N.C. Bar #46048)
301 East Park Avenue
Charlotte, NC  28203
Tel.:   704-338-1220
Fax:   704-338-1312
Email: jspyker@tinfulton.com

28